IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TYRES FRAI' AUNT AUTREY,       )
                               )
       Plaintiff,              )
                               )
vs.                            )       CIVIL ACTION 07-00895-CG-B
                               )
MORNING STAR BAPTIST CHURCH,   )
*et al.,*                      )
                               )
       Defendants.             )

## REPORT AND RECOMMENDATION

This case is before the Court on Defendants Morning Star
Baptist Church, Charles McMillan, Robert Malone and John Tucker's
Motion to Dismiss, for Judgment on the Pleadings and/or to Strike.
(Doc. 9).  An evidentiary hearing was conducted on July 15, 2008,
and on July 25, 2008, Defendants' motion was converted into a motion
for summary judgment pursuant to Rule 12(d) of the Federal Rules of
Civil Procedure.  The parties were notified of the conversion and
were provided an opportunity to file any materials in support or in
opposition to the motion. (Doc. 21).  Based upon a careful review
of Defendants' motion, and supporting materials, Plaintiff's
submissions in opposition, and the evidence received at the July
15th hearing, the undersigned recommends that Defendants' motion be
GRANTED, and that Plaintiff's Complaint be DISMISSED.

## I.   Background Facts

Viewing the facts in the light most favorable to Plaintiff, the
record reflects that Plaintiff's mother, Ms. Evangeline Diane
Autrey, died in 1975 and was buried in what is known as the "old"

Cemetery.   The Cemetery is operated by the Morning Star Baptist Church and is located in close proximity to the church, in Monroeville, Alabama.  (Doc. 23, Ex. 3).  Plaintiff was three (3) years old at the time of his mother's death.  (Id.)  According to Plaintiff, in May 2000/2001, he contacted officials at the Morning Star Baptist Church regarding records reflecting the location of his mother's burial spot.  (Doc. 28, Plaintiff's Affidavit).  Plaintiff was advised that while the Church maintains records for the new cemetery, the Church does not have any records which list the burial locations for persons buried in the old cemetery.  Plaintiff was further advised that the Church relies upon relatives of the deceased to determine the burial locations of persons buried in the old cemetery.  Church officials made arrangements in May 2000/2001 for Corine Price, who is the birth mother of Plaintiff's deceased mother, Ms. Autrey, to meet Plaintiff at the cemetery and show him the location of his mother's burial plot[1].  According to Plaintiff, he advised church officials that he was going to sue and expressed reluctance regarding Ms. Price, with whom he has a strained relationship.  Notwithstanding, Plaintiff met with Ms. Price during the May 2000/2001 timeframe, and she pointed out to him a burial site which she said belonged to his mother.

_____

[1]At the evidentiary hearing conducted on July 15, 2008, Plaintiff testified that the same day that he called the church, he went to the church cemetery, and Ms. Price directed him to what she alleged was his mother's burial site.  Plaintiff further testified that he did not want to rely on Ms. Price, but did so because the church told him it was their policy to rely upon relatives of the deceased regarding burial locations as the church has no records.

Plaintiff then began visiting the burial site identified by Ms. Price and had a marker placed at the site.     At some point thereafter, Plaintiff undertook efforts to have his mother's body exhumed.    According to Plaintiff, he wanted his mother's body exhumed so that her body could be returned to Mississippi in order to enable law enforcement to perform an autopsy in connection with their investigation of her murder. Additionally, Plaintiff wanted his mother buried closer to him. (Doc. 23-4).   In December 2006, after Plaintiff had scheduled a memorial service for his mother and had made arrangements to have his mother's body exhumed and transported to Mississippi, he learned that the burial site previously identified by Ms. Price was not in fact his mother's burial site[2].

Plaintiff, on January 22, 2007, filed a Petition in the District Court of Monroe County, Alabama to Exhume Body. (Doc. 20, Ex. 3).    Reverend John Tucker, pastor of Morning Star Baptist Church, was named as the Defendant.    Revered Tucker and church officials did not object to Plaintiff's request to relocate his mother's body to Mississippi; however, they sought assurances that the correct body was being exhumed, and that Plaintiff would be responsible for any damage to the cemetery, and/or other grave sites. (Doc. 23, Ex. 3).    During the course of the state

_____

[2]At the July 15th evidentiary hearing, Plaintiff testified that Ms. Price advised him on December 31, 2006, that she had showed him the wrong grave, and that she did not want him to exhume the wrong body.   According to Plaintiff, at this point, he had been visiting the grave, had a marker placed at the grave, had planned a memorial service, and was making arrangements to have the body transported to Mississippi.

litigation, the burial site for Plaintiff's mother was narrowed down to one of two burial sites in the "old" cemetery.  It was believed that of the two burial sites, one belonged to Plaintiff's mother, and the other one belonged to her aunt. (Id.)

On April 13, 2007, the state court judge entered an order conditionally allowing Plaintiff to exhume his mother's body for burial im Mississippi. (Id.)  Pursuant to the court's order, Plaintiff was required to obtain a release from the heirs of his mother's late aunt, who is believed to be buried in one of the two identified grave sites.  Plaintiff was also directed to post a bond in the amount of $10,000 to cover any damages caused to the church grounds, or other graves in the cemetery. (Id.)  Additionally, Plaintiff was directed to sign an agreement assuming responsibility for all costs incurred in exhuming his mother's body, and all costs incurred in restoring the cemetery grounds to their original condition.  Plaintiff's appeal of the state court order was denied.[3]

Plaintiff filed the instant action on December 28, 2007 against Morning Star Baptist Church, Robert Malone, Charles McMillian and John Tucker. (Doc. 1).  The individual defendants are ministers and/or officers of the Church.  On January 18, 2008, Plaintiff filed an amended Complaint alleging negligence and breach of contract.

---

[3]At the evidentiary hearing, Mr. Robert Malone testified that Church officials spoke with the family whose mother is believed to be buried in one of the two burial sites about signing a release so that Plaintiff could exhume what is likely his mother's grave; however, that family did not want their mother's remains disturbed and, thus, would not agree to a release.  As a result, Plaintiff has not been able to proceed with his efforts to have his mother's body exhumed.

(Doc. 3).   In seeking the dismissal of this action, Defendants assert that this case should be dismissed because it is duplicative of the state court action.   Defendants also assert that Plaintiff's claims are barred by res judicata and/or collateral estoppel because the subject matter of this litigation is the same as that which was before the state court of Monroe County, Alabama.   Defendants further assert that the allegations in Plaintiff's amended Complaint are beyond the applicable two year and six year statutes of limitations.

**II.   Discussion and Analysis**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions, on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002)(quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly

5

probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-250 (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See <u>Anderson</u>, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States</u>, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Miranda v. B&B Cash Grocery Store</u>, <u>Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992)(citing <u>Mercantile Bank & Trust v. Fid. & Deposit Co.</u>, 750 F.2d 838. 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Co.</u>, 32 F.3d 520, 524 (11th Cir. 1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Otherwise stated, the non-movant must "demonstrate

6

that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc</u>., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990)(citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)(internal quotation and citation omitted).

Although Plaintiff's amended Complaint is not the model of clarity, it appears that Plaintiff is alleging that Defendants breached a contract by not maintaining records which identify the burial location of persons who have been buried in the "old" church cemetery.  Plaintiff further asserts that Defendants' failure to maintain records, and their policy of relying on the memories of family members to ascertain burial locations constitutes

negligence[4].  At the onset, the undersigned observes that Plaintiff
has not alleged specific terms of the purported contract that have
been breached, nor has he alleged that he was a party or beneficiary
of said contract.  Assuming *arguendo* that Plaintiff can establish
the existence of a contract, and that he is entitled to sue under
the contract, any claim for breach of the contract arose soon after
the inception of the contract because there is nothing in the record
which indicates that the church ever kept records that identify the
burial location of persons buried in the cemetery.

ALA. CODE § 6-2-34 provides that in Alabama, breach of contract
actions are subject to a six year statute of limitations.  As a
general rule, an action for breach of contract comes into existence,
or "arises" at the time the breach occurs.  It does not arise at the
entry of the agreement, or when damages result, or when the
plaintiff discovers the breach.  Stephens v. Creel, 429 So.2d 278,
282 (Ala. 1983).  As noted supra, there is nothing in the record
which suggests that the Church ever maintained burial records.[5]

---

[4]Plaintiff references ALA. CODE § 27-17A-48, which
establishes record keeping requirements for cemeteries, in
support of his claim that Defendants' failure to maintain records
constitutes negligence.

[5]During the evidentiary hearing, Defendant Malone testified
that at the time that Plaintiff's mother was buried, the Church
did not maintain records, but relied upon the church sexton to
ascertain the location of burial sites.  Upon the sexton's death
in 1977, the Church had to rely upon family members for this
information.

Assuming arguendo that the church did, at some point, maintain written records, the evidence is undisputed that no records existed as of  May 2000/2001 when Plaintiff made his initial inquiry regarding the location of his mother's burial site.  Thus, the alleged breach took place, and the cause of action arose, at the latest, in May 2001, when the Church confirmed that no records existed.  Because Plaintiff did not file the instant action until December 2007, which is more than six years after his May 2001 inquiry, Plaintiff's breach of contract action is barred by the applicable statute of limitations.

Plaintiff's negligence action is also barred by the applicable statute of limitations.  In Alabama, claims premised in negligence are time-barred two years from the date the plaintiff's cause of action accrues. Ala. Code § 6-2-38(l); <u>see</u>, <u>e.g.</u>, <u>Singer Asset Finance Co., LLC v. Connecticut General Life Ins. Co.</u>, 975 So.2d 375, 382 (Ala. Civ. App. 2007); <u>Boyce v. Cassese</u>, 941 So.2d 932, 945 (Ala. 2006); <u>Jim Walter Homes, Inc. v. Nicholas</u>, 843 So.2d 133, 135-136 (Ala. 2002). "It is well settled under Alabama law that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury." <u>Piazza v. Ebsco Indus.</u>, 273 F.3d 1341, 1347 (11th Cir. 2001) (citing <u>Booker v. United Am. Ins. Co.</u>, 700 So.2d 1333, 1339 (Ala. 1997)). <u>See also</u> <u>Spain v. Brown & Williamson Tobacco Corp</u>., 872 So.2d 101, 114 (Ala.

2003);

Moon v. Harco Drugs, Inc., 435 So.2d 218 (Ala. 1983)(finding in a personal injury action against a drug store corporation for the negligent sale at one of its stores of improper insulin, the cause of action accrued when the plaintiff's wife first became ill from the insulin, not when she discovered she was taking the wrong insulin).

In this case, Plaintiff alleges that in May 2000/2001, he sought records from the Church to ascertain the location of his mother's burial site and learned that the Church does not posses any records which identify the location of his mother's grave, and that he would instead have to rely upon the best recollections of his mother's relatives. Plaintiff's negligence claim accrued at that point because that is when he sustained a legal injury, in that his request for records was denied, because they did not exist, and he was forced to rely upon the best recollections of his mother's relatives.  While Plaintiff asserts that he was humiliated and suffered mental anguish in 2007 when he learned that Ms. Price, a relative of his mother, had taken him to the wrong burial site in 2001, and  caused him to visit the wrong burial site, and to place a marker on the wrong site, such does not change the fact that Plaintiff first sustained a legal injury in May 2001, at the latest, with the denial of his request for records.  The fact that the full extent of Plaintiff's damages may not have been apparent at that

point is of no moment because that is when the first injury occurred and thus, when the action accrued.  The instant action, filed more than six years after May 2001, is beyond the two year statute of limitations applicable to negligence actions.

**III.     Conclusion**

For the reasons discussed herein, the undersigned RECOMMENDS that Defendants' motion be GRANTED, and that Plaintiff's Complaint be DISMISSED because it is barred by the applicable statutes of limitations[6].

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the **11th** day of **March, 2009.**

                    **/s/ Sonja F. Bivins**
            **UNITED STATES MAGISTRATE JUDGE**

---

[6]Because the undersigned finds that Plaintiff's claims are barred by the applicable statute of limitations, the Court has not addressed the other issues raised by Defendants.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.    <u>**Objection**</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).    The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    <u>**Opposing party's response to the objection.**</u>   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.   Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

12

3.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate
judge finds that the tapes and original records in this action are
adequate for purposes of review.  Any party planning to object to
this recommendation, but unable to pay the fee for a transcript, is
advised that a judicial determination that transcription is
necessary is required before the United States will pay the cost of
the transcript.

**/s/SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**